| | | |
|---|---|---|
| **SUSAN DECUYPER,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No. 3:13-cv-00850** |
| | § | |
| **HAMPTON RESERVE** | § | **District Judge Campbell/** |
| **HOMEOWNERS' ASSOCIATION, INC.,** | § | **Magistrate Judge Bryant** |
| | § | |
| **Involuntary Plaintiff,** | § | |
| | § | |
| **v.** | § | **DEMAND FOR JURY TRIAL** |
| | § | |
| **AMY FLINN, ROBERT NEBEL,** | § | |
| **JOY NEBEL, and SUE RUTA,** | § | |
| | § | |
| **Defendants.** | § | |
| _____ | § | |

---

### AMENDED COMPLAINT

---

Plaintiff Susan DeCuyper, by and through her undersigned attorney, hereby files this Amended Complaint and alleges upon information and belief:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action is a civil action arising under the Constitution, laws, or treaties of the United States.

2.     This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because certain of the claims herein are so related to claims in the action within such original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, all of the property that is the subject of this action is located in this district, and Defendants regularly conduct business in this district.

## PARTIES

4.    Plaintiff Susan DeCuyper ("Plaintiff") is an individual residing in Williamson County, Tennessee.

5.    Involuntary Plaintiff Hampton Reserve Homeowners' Association, Inc. (the "HOA") is a nonprofit corporation formed under the auspices of the Tennessee Nonprofit Corporation Act, Tenn. Code Ann. §§ 48-51-101 *et seq.*  The HOA is named herein as an involuntary plaintiff pursuant to Fed. R. Civ. P. 19.

6.    Defendant Amy Flinn is an individual residing in Williamson County, Tennessee.  Ms. Flinn can be served with judicial process at 9541 Sanctuary Place, Brentwood, Tennessee 37027.

7.    Defendant Robert Nebel is an individual residing in Williamson County, Tennessee.  Mr. Nebel can be served with judicial process at 9554 Yellow Finch Court, Brentwood, Tennessee 37027.

8.    Defendant Joy Nebel is an individual residing in Williamson County, Tennessee.  Ms. Nebel can be served with judicial process at 9554 Yellow Finch Court, Brentwood, Tennessee 37027.

9.    Defendant Sue Ruta is an individual residing in Williamson County, Tennessee.  Ms. Ruta can be served with judicial process at 9557 Hampton Reserve Drive, Brentwood, Tennessee 37027.

10.    At all relevant times herein Defendants were the agent and/or authorized representative of each other and at all relevant times herein acted within the scope of such individual relationships and with the approval, consent and/or encouragement of each other.

## FACTUAL BACKGROUND

11.    On February 28, 2002, Princeton Hills Venture, LLC (the "Developer") executed the Declaration of Protective Covenants, Conditions & Restrictions (the "CC&Rs") for the Hampton Reserve subdivision in Brentwood, Tennessee ("Hampton Reserve" or the "Development").  On February 28, 2002, the CC&Rs were duly recorded with the Williamson County Register of Deeds.  A true and accurate copy of the CC&Rs is attached hereto as **Exhibit 1** and incorporated herein.[1]

---

[1]    Capitalized terms used in this Amended Complaint are defined herein and/or in the CC&Rs attached hereto.

12. The HOA was formed on April 11, 2002. A true and accurate copy of the HOA's Tennessee Secretary of State, Division of Corporations, filing information is attached hereto as **Exhibit 2** and incorporated herein.

13. Hampton Reserve is a gated community comprised of ninety-two (92) residential Lots where families, including over 150 adults, reside. All Hampton Reserve real property that is or is to be owned, held, transferred, sold, conveyed and/or occupied is subject to the CC&Rs.

14. The stated purposes of the CC&Rs include:

    a. To establish and provide a system of administration, operation and maintenance of the common areas of the Development" (the "Common Areas");

    b. To provide for the protection and preservation of the values, amenities, desirability and attractiveness of the Development (the "Aesthetics");

    c. To establish for the mutual benefit, interest and advantage of each and every person or other entity hereafter acquiring any portion of the Development, certain rights, easements, privileges, obligations, restrictions, covenants, liens, assessments, and regulations governing the use and occupancy of the Development and the maintenance, protection and administration of the common use facilities thereof (the "Privileges"); and

    d. To further a plan to promote and protect the operative aspects of residency or occupancy in the Development (the "Protections");

15. The CC&Rs also provide:

    a. Each Owner shall observe all governmental building codes, health restrictions, zoning restrictions and other regulations applicable to his/her Lot. In the event of any conflict between any provision of such governmental code, regulation or restriction and any provision of the CC&Rs, the more restrictive provision shall apply.

    b. The Plat designates certain areas for roads, utilities, drainage, Common Areas, and recreational areas. The easements so designated on the Plat encumber the Lots as shown on the Plat and are hereby established as perpetual and irrevocable easements. Said easements are granted and reserved for the use and benefit in common of all Owners in the Development and their agents, servants, family members and invitees. No Owner shall have the right to restrict, impede or take any action in any way to prohibit or limit the use in common by all Owners of said easements.

    c. To the extent then required by applicable laws and/or regulations, all amendments of the CC&Rs must be approved by the Planning

Commission of the City of Brentwood and Williamson County, or its successor governmental entity. Any such amendment shall not become effective until the instrument evidencing such change has been filed of record.

d. In the event the Association fails to act to enforce any restriction contained herein, any Owner of any Lot may enforce the CC&Rs as aforesaid against any other Owner.

e. The Common Areas may be owned by the HOA in fee or for a term of years, but for the nonexclusive use, benefit and enjoyment of the owners subject to the provisions of the CC&Rs, and will be shown as Common Areas on the plats of the Development placed of record now or in the future.

16. The CC&Rs and its provisions, including those concerning the Common Areas, the Aesthetics, the Privileges, and the Protections (collectively, the "Covenants"), are expressly intended to be covenants running with the land and are binding on all parties having or acquiring in the future any right, title or interest in and to all or any portion of the Development, and expressly inure to the benefit of each present and future owner thereof. All Hampton Reserve residents and all parties having or acquiring in the future any right, title or interest in and to all or any portion of Hampton Reserve benefit and were intended to benefit from the CC&Rs.

17. The CC&Rs also state: "The covenants, conditions and restrictions contained herein shall be appurtenant to and run with the land and shall be binding upon all Owners and parties hereinafter having an interest in any of the Development, and all parties claiming under them, until December 31, 2022."

18. Between January 1, 2013, and August 7, 2013, the members of the HOA board of directors (the "HOA Board") were (a) Defendant Joy Nebel, member and president of the HOA; (b) Defendant Flinn, member and secretary of the HOA; (c) Defendant Ruta, member; (d) Stan Kasakevics, member and treasurer of the HOA; and (e) Kwame Asare, member and vice-president of the HOA.

19. On or after July 16, 2013, Defendants had served on some, but not all, residents of Hampton Reserve a notice of an August 8, 2013, special meeting for the HOA (the "HOA Special Meeting"). A true and accurate copy of the notice of the HOA Special Meeting is attached hereto as **Exhibit 3** and incorporated herein.

20.    Among other things, the notice of the HOA Special Meeting advised Hampton Reserve residents that the CC&Rs would be modified, altered and/or amended to permit the transfer of select portions of the Common Areas to some, but not all, Hampton Reserve residents (the "Amendments"). Under the Amendments members of the HOA Board, including Defendants, are expected and intended recipients of and will financially gain and personally profit from transfers of the Common Areas, which transfers negatively impact Hampton Reserve and are in violation of the CC&Rs and the Covenants.

21.    On or after July 16, 2013, Defendants had served on some, but not all, residents of Hampton Reserve a proxy for voting at the HOA Special Meeting (the "HOA Proxy"). The HOA Proxy improperly restricts its use only to those HOA members designated by Defendants, including Defendants themselves. Certain members of the HOA Board, including Defendants, actively solicited signed HOA Proxies from some, but not all, residents of Hampton Reserve. A true and accurate copy of the HOA Proxy is attached hereto as **Exhibit 4** and incorporated herein.

22.    Prior to the HOA Special Meeting Hampton Reserve residents asked Defendants to have the HOA Special Meeting postponed for up to thirty (30) days so as to allow the residents, among other things, an adequate opportunity to read, review, analyze, and seek legal advice regarding the 110-plus page package comprising the Amendments and other documents delivered to them by Defendants shortly before the scheduled HOA Special Meeting (the "Postponement Requests"). Defendants rejected the residents' Postponement Requests.

23.    Prior to and during the HOA Special Meeting members of the HOA, including Plaintiff, demanded that Defendants answer questions and investigate, evaluate and take appropriate corrective and other actions on behalf of the HOA and its members and not violate the CC&Rs or compromise the Covenants, not advance or enter into any agreements, votes or transactions in which Defendants are interested or not independent or in which Defendants may otherwise realize financial gain or profit in their individual capacities, not participate in actions that constitute conflicts of interest as HOA Board officers and members, and not engage in activities in contravention of the HOA's best interests and its members' legal rights (the "Resident Demands").

24. The HOA Special Meeting was convened on August 8, 2013.

25. During the HOA Special Meeting Hampton reserve residents renewed their Postponement Requests and again Defendants rejected the Postponement Requests. However, during the HOA Special Meeting Defendants ostensibly agreed to a vote on the residents' Postponement Requests (the "Postponement Vote").

26. The Postponement Vote was conducted and received more votes in favor than against. However, Defendant Ruta, who called the vote with the approval, encouragement and support of the other Defendants and their representatives, falsely reported the voting results by representing that the Postponement Vote did not receive the majority of the votes cast, did not pass and was defeated. Hampton Reserve residents in attendance quickly objected to Defendant Ruta's false representations and immediately corrected her Postponement Vote results tally. Ms. Ruta stubbornly stood by her own voting count and Defendants' blatant attempt to unlawfully manipulate and fix the vote. Notwithstanding the true outcome of the Postponement Vote the HOA Special Meeting was not postponed as requested.

27. During the HOA Special Meeting, Defendant Robert Nebel, to the visible satisfaction of his spouse, Defendant Joy Nebel, audibly, incredulously and in an unsolicited vitriolic and expletive-ridden outburst publicly said to Plaintiff, while she was politely and calmly exercising her right to participate in the open discourse of the evening's discussions, "shut the f--- up, you rotten c---."

28. During the HOA Special Meeting, Defendant Ruta abruptly resigned her position as a HOA Board member. Defendant Ruta has not been reelected to the HOA Board, as provided in the HOA governing documents or Robert's Rules of Order, since her resignation.[2]

29. During the HOA Special Meeting, Defendant Joy Nebel abruptly resigned her positions as a HOA Board member and officer. Defendant Joy Nebel has not been reelected to the HOA Board, as provided in the HOA governing documents or Robert's Rules of Order, since her resignation.

30. During the HOA Special Meeting, Stan Kasakevics, through the proxy of his spouse, abruptly resigned his positions as a HOA Board member and officer. Stan Kasakevics has not been

---

[2]    As used herein, the terms "Robert's Rules of Order" and "RONR" refer to *Robert's Rules of Order Newly Revised* (11th ed., 2011).

reelected to the HOA Board, as provided in the HOA governing documents or Robert's Rules of Order, since his resignation.

31.    During the HOA Special Meeting, Robert Duncan, following a heated colloquy and disagreement with the former, i.e., pre-2013, president and chair of the HOA Board, abruptly resigned his position as HOA Board-appointed CC&R Committee chair and left the HOA Special Meeting.  Robert Duncan has not been reappointed to the CC&R Committee, as provided in the HOA governing documents or Robert's Rules of Order, since his resignation.

32.    Defendant Flinn did not resign her positions as a HOA Board member and officer, as did her fellow Defendants, during the HOA Special Meeting.  However, after the HOA Special Meeting concluded Defendant Flinn did notify the HOA that she would no longer serve on the HOA Board.

33.    At all relevant times mentioned herein Plaintiff was and is a member of the HOA and a resident of Hampton Reserve.  At all relevant times mentioned herein Plaintiff and Defendants were and are Owners of Lots in Hampton Reserve.

34.    The claims made by Plaintiff herein are not collusive so as to confer jurisdiction that the Court would otherwise lack.  The HOA's interests in this litigation are more aligned with Plaintiff's position and interests herein than with Defendants' positions and interests herein.  Defendants' wrongful acts and omissions as alleged herein are *ultra vires* and were engaged in and/or tasked without the HOA's consent or approval and outside the HOA Board's authority. Defendants' wrongful activities are antagonistic, adversely interested, and involved in the transactions complained of herein. Defendants have full knowledge of the bases for Plaintiff's claims.

35.    Defendants' actions and inactions as complained of herein were so egregious as to constitute reckless indifference to and a deliberate disregard of the HOA and its members' rights; represent actions which are without the bounds of reason; comprise matters in which Defendants have participated in or approved the alleged wrongdoing or are otherwise financially interested in the challenged transactions; involve particular individuals who themselves are the alleged wrongdoers and who therefore would be invited to sue themselves; and under the circumstances demand upon Defendants to take appropriate action

or take remedial measures on the HOA's or any of its members' behalves, collectively or individually, to address the alleged wrongdoings would be futile.

## CLAIMS FOR RELIEF

### COUNT I

### FRAUD AND MISREPRESENTATION

36.     Paragraphs 1-35, above, are hereby restated and incorporated herein.

37.     Defendants and the HOA Board were advised by qualified real estate counsel that no portion of the Common Areas could be transferred to any Lot Owner without first obtaining the unanimous consent of all Lot Owners.

38.     Defendants and the HOA Board represented to Hampton Reserve residents that the HOA would be given 30 days to review the proposed amendments to the CC&Rs documents before a vote.

39.     Defendants and the HOA Board represented to Hampton Reserve residents that all minutes of the HOA Board meetings would be posted on the neighborhood website for all Hampton Reserve residents to review.

40.     Defendants and the HOA Board represented to Hampton Reserve residents that all Hampton Reserve residents would be provided use of and access to Hampton Reserve emails sent by, between and amongst other Hampton Reserve residents without interception, obstruction or unlawful interference.

41.     Defendants and the HOA Board represented to Hampton Reserve residents that no HOA Board member, or employee or spouse of a HOA Board member, would use his/her position to profit or enhance his/her own financial status or gain through recommendation of HOA votes or actions from which he/she may individually profit and/or reap financial benefit or gain.

42.     Defendants and the HOA Board represented to Hampton Reserve residents that no HOA Board member would use any funds being held for the HOA's business for personal use or to advance any agenda from which he/she may individually profit and/or reap financial gain.

43.     Defendants and the HOA Board represented to Hampton Reserve residents that all Hampton Reserve residents would be provided access to all resolutions, minutes of meetings and other written

documentation reflecting the HOA Board and/or HOA committees' decisions and votes regarding all matters concerning the business of the HOA, including its financial affairs, its legal affairs, and its income and expenditures.

44.    Defendants and the HOA Board represented to Hampton Reserve residents that no Defendant or HOA Board member would participate in or support any activity in which any of them has a conflict of interest or from which any of them may individually profit and/or reap financial gain.

45.    Defendants and the HOA Board represented to Hampton Reserve residents that a concept map of Hampton Reserve identified those portions of the Common Areas that are sellable, not sellable and probably not sellable and that only those portions of the Common Areas totaling 13 acres would be available for sale.

46.    Defendants and the HOA Board represented to Hampton Reserve residents that the funds received by the HOA from the sale of the Common Areas and the subsequent maintenance savings would be used to fund other projects which will, in the long run, further increase the value of homes in Hampton Reserve.  Examples of such projects include a community pool, a club house, improved walkways/trails, a community playground, sports courts, upgraded security, and upfront costs of conversion from city to well water for landscape irrigation.

47.    Defendants and the HOA Board represented to Hampton Reserve residents that the Common Areas would be sold subject to certain identified restrictions including, but not limited to, a price of $5,000 per 1/10th acre prorated for portions thereof.

48.    Defendants and the HOA Board represented to Hampton Reserve residents that no Lot would be enlarged to more than one acre (43,560 sq. ft.) as a result of the purchase of the Common Areas.

49.    Defendants and the HOA Board represented to Hampton Reserve residents that the funds from the sale of the Common Areas would be used for amenities improvements.

50.    Defendants and the HOA Board represented to Hampton Reserve residents that if the Common Areas are to be sold then the HOA would set the best price, as defined as the price that maximizes revenue to the HOA.

51.     Defendants and the HOA Board represented to Hampton Reserve residents that "[i]f you choose to appoint a Proxy, you must appoint one (1) of the five (5) following [HOA Board] Members as a proxy …"

52.     Defendants and the HOA Board represented to Hampton Reserve residents that HOA Board member Sue Ruta is going to start working with Plaintiff in forming a Resolution committee and "designing a plan to help assist with grievances by residents."

53.     Defendants and the HOA Board represented to Hampton Reserve residents that the HOA Board would be timely in making sure the minutes of the HOA Board meetings were posted on the neighborhood website for all Hampton Reserve residents to review and provide comment.

54.     Defendants and the HOA Board represented to Hampton Reserve residents that the HOA Board would hire an attorney for the HOA to serve the best interests of all, not just some, HOA residents and homeowners.

55.     Defendants and the HOA Board represented to Hampton Reserve residents that they would not use their positions of trust and confidence to profit or enhance his/her own financial status or otherwise solicit and/or encourage HOA member or HOA Board votes or actions from which he/she may pay profit and/or reap individual financial gain.  Defendants did not disclose their conflicts of interest and/or appearances of impropriety regarding their Common Areas intentions and negotiations to the HOA homeowners and residents or their appropriate abstention(s) from such votes as reflected in the HOA Board minutes.

56.     Defendants and the HOA Board represented to Hampton Reserve residents that they would be transparent and provide all Hampton Reserve HOA members an opportunity to inspect the books and records of the HOA and assess the financial condition of the HOA, which Defendants and HOA Board members represented was in dire financial condition and near bankruptcy.

57.     John Bradfield Scarbrough ("Scarbrough") is an individual residing in Williamson County, Tennessee.  Scarbrough and certain other HOA Board members are not named as defendants to this action at this time but Plaintiff reserves the right to do so at a later date as events warrant and/or as discovery in

this action progresses.

58.    On or about February 11, 2013, Defendants retained Scarbrough to modify, alter and/or amend the CC&Rs and to provide advice, guidance and direction concerning the anticipation and/or avoidance of future litigation regarding any such proposed modifications, alterations and/or amendments.

59.    On or about February 11, 2013, the Defendants hired Scarbrough as their legal representative and litigation counsel and significantly increased the HOA Board's insurance coverage for its directors, officers and employees, which include Defendants.    The HOA has no employees.    Since Defendants retained Scarbrough as their legal representative and litigation counsel the attorneys' fees paid by the HOA for legal services have significantly and exponentially increased over prior years.

60.    The last HOA Board minutes posted on the neighborhood website are dated February 11, 2013, on or about the time Scarbrough was retained by Defendants.

61.    Before August 7, 2013, without the prior knowledge or consent of other Hampton Reserve residents and members of the HOA, Defendants and Scarbrough had private and confidential meetings and/or communications with Brentwood public officials and each other concerning the modification, alteration and/or amendment of the CC&Rs and the Covenants, which discussions began with Defendant Flinn's now years long attempt to acquire a portion of the Common Areas for herself so that she can install a swimming pool in the backyard of her own Hampton Reserve residence.

62.    In 2010 Bob Parks Auction Co. sold at auction six undeveloped Hampton Reserve lots on Yellow Finch Court for $646,800.    Assuming each of these lots is 6/10th of an acre that calculates to $17,967 per 1/10th acre sold.    Using below-market Bob Parks auction property sales prices at $17,967 per 1/10th acre, the HOA Board's significantly below-market $5,000 per 1/10th acre, and the HOA Board's recommendation that if the Common Areas are to be sold then "the HOA [should] set the best price, as defined as the price that maximizes revenue to the HOA," then the "best price" using below-market valuations is $17,967 per 1/10th acre.    At 13 acres of "available" common area this comes to a minimum HOA revenue generation, even assuming that any common area can lawfully be sold as proposed by the HOA Board, of $2,335,710.

63. The representations and assurances made by Defendants as set forth hereinabove are untrue, deceptive and otherwise misleading. Defendants and their representatives engaged and participated in activities that are contrary to the aforementioned representations and assurances of Defendants and the HOA Board. Among other things, Defendants and their representatives surreptitiously, without Hampton Reserve residents' knowledge or consent, expended HOA funds and financial resources in order to advance Defendants' personal agendas and blatant conflicts of interest to their own individual and personal financial benefit, gain and profit. Such activities are premature, unreasonable, arbitrary and capricious, detrimental to property values in Hampton Reserve, lender mortgage and insurance valuation and collateral requirements and restrictions as to some or all Owners of Lots and other residents in Hampton Reserve, inconsistent and disproportionate in application, do not apply uniformly, are contrary to existing property zoning restrictions and requirements, are contrary to the intentions of the Developer of Hampton Reserve and the City of Brentwood, in violation of the CC&Rs prohibitions and restrictions vis-à-vis the binding and permanent effect of the Covenants and the sale/transfer of the Common Areas, and otherwise in derogation of Defendants' responsibility of transparency to the Hampton Reserve residents as well as the Hampton Reserve residents' rights to free use and enjoyment of Hampton Reserve property, including the Common Areas, as represented to them by Defendants and/or the HOA Board prior to and while residing in Hampton Reserve.

64. At the time Defendants made the aforementioned representations they knew or should have known that such representations and/or promises were false, deceptive and misleading.

65. Plaintiff and others similarly situated justifiably relied upon Defendants' false, deceptive and misleading representations to their detriment and as a direct and proximate result have suffered damages. Defendants' wrongful acts as alleged herein constitute fraud, constructive fraud, concealment, promissory fraud, intentional misrepresentations, and negligent misrepresentations and have caused and are causing damage to Plaintiff and others similarly situated.

66.     When engaging in the acts as set forth hereinabove, Defendants acted maliciously, i.e., with ill-will, hatred and/or spite. Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to the consequences can be implied.

67.     Defendants' wrongful acts as alleged herein have caused and are causing damage to Plaintiff. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered compensatory and consequential damages. Plaintiff also is entitled to an award of exemplary and punitive damages in excess of $1,000,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful and bad faith conduct.

68.     Accordingly, Plaintiff prays for relief as hereinafter set forth.

## COUNT II

### BREACH OF FIDUCIARY DUTY, CORPORATE WASTE, DISSIPATION OF CORPORATE ASSETS AND ABUSE OF AUTHORITY

69.     Paragraphs 1-68, above, are hereby restated and incorporated herein.

70.     Defendants owe Plaintiff the duty of good faith and fair dealing with respect to their activities relating to the HOA.  Defendants owe Plaintiff the duty of loyalty in that they were prohibited from dealing on behalf of any people, including themselves, having an interest adverse to the HOA and its members.  Defendants owe Plaintiff the duty of care in that they were obligated to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law in connection with HOA business, including corporate waste, dissipation of corporate assets, mismanagement, and failing to comply with the CC&Rs, the Covenants, the HOA governing documents and/or Robert's Rules of Order.

71.     The aforementioned acts of Defendants, including their activities, representations and concealments concerning the Common Areas and Covenants and Defendants' misuse of HOA members' dues and HOA funds to pay substantial amounts to an attorney helping to advance Defendants' individual and personal agendas and to divert corporate assets for improper or unnecessary purposes that conflict with the best interests of the HOA and its members, are so one-sided that no business person of ordinary,

sound judgment could conclude that the HOA or its members have received due or adequate consideration or that the actions of Defendants were in good faith and in the best interests of the HOA and its members.

72.     Defendants breached their duties of good faith and fair dealing, loyalty, and care by engaging in the aforementioned activities and making the aforementioned concealments and false representations to Plaintiff and the HOA and by failing to comply with the CC&Rs, the Covenants, the HOA governing documents and/or Robert's Rules of Order.

73.     When engaging in the acts as set forth hereinabove, Defendants acted maliciously, i.e., with ill-will, hatred and/or spite.  Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to the consequences can be implied.

74.     Plaintiff has been damaged in excess of the jurisdictional minimum of this Court. Defendants' wrongful acts as alleged herein have caused and are causing damage to Plaintiff.  As a direct and proximate result of the aforementioned acts, Plaintiff has suffered compensatory, statutory and consequential damages. Plaintiff also is entitled to an award of exemplary and punitive damages in excess of $1,000,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful and bad faith conduct.

75.     Accordingly, Plaintiff prays for relief as hereinafter set forth,

## COUNT III

## VIOLATION OF THE FEDERAL WIRETAP ACT

76.     Paragraphs 1-75, above, are hereby restated and incorporated herein.

77.     The federal Electronic Communications Privacy Act, 18 U.S.C. 2510 *et seq.,* (the "Federal Wiretap Act") makes it a federal crime to wiretap or to use a machine to capture the communications of others without court approval.  It is likewise a federal crime to use or disclose any information acquired by illegal wiretapping or electronic eavesdropping.  Although the Federal Wiretap Act originally covered only wire and oral communications, Congress amended it in 1986 to include electronic communications, e.g., email.

78. Violations of the Federal Wiretap Act can result in imprisonment for not more than five years; fines up to $250,000 (up to $500,000 for organizations); civil liability for damages, attorneys' fees and punitive damages.

79. At all relevant times herein Defendants had access to the emails of Hampton Reserve residents, including the contents of the emails by, between and amongst the 150-plus adults residing in Hampton Reserve, and had the ability to intercept, obstruct and block such emails.

80. In violation of the Federal Wiretap Act Defendants and their representatives, by use of electronic, software, mechanical or other devices, did themselves and procured others on their behalves to intentionally, knowingly, improperly and unlawfully intercept, obstruct, block, disclose and use the emails and the contents of emails originated by Plaintiff and third parties not named as Defendants herein (the "Intercepted Emails"). The Intercepted Emails were sent to third parties not named as Defendants herein and were intercepted, obstructed, blocked, disclosed and/or used by Defendants without Plaintiff and/or the intended recipients' prior consent and for purposes in furtherance of Defendants' unlawful and tortious activities as described herein.

81. On August 6, 2013, Plaintiff sent a letter to Defendant Flinn, via certified mail, regular mail and her attorney requesting confirmation of Defendants' agreement to comply with Plaintiff's cease and desist notice vis-à-vis the Intercepted Emails (the "Cease and Desist Demand"). No response to the Cease and Desist Demand was received. A true and accurate copy of the Cease and Desist Demand is attached hereto as **Exhibit 5** and incorporated herein.

82. When engaging in the acts as set forth hereinabove, Defendants acted maliciously, i.e., with ill-will, hatred and/or spite. Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to the consequences can be implied.

83. Plaintiff has been damaged in excess of the jurisdictional minimum of this Court. Defendants' wrongful acts as alleged herein have caused and are causing damage to Plaintiff. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered compensatory, statutory and consequential damages. Plaintiff also is entitled to an award of exemplary and punitive damages in excess

of $1,000,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful and bad faith conduct.

84.    Accordingly, Plaintiff prays for relief as hereinafter set forth.

## COUNT IV

## VIOLATION OF THE TENNESSEE WIRETAP ACT

85.    Paragraphs 1-84, above, are hereby restated and incorporated herein.

86.    Tennessee's Wiretapping and Electronic Surveillance Act, Tenn. Code Ann. §§ 39-13-601 *et seq.* and 40-6-301 *et seq.*, (the "Tennessee Wiretap Act") provides that any aggrieved person whose electronic communication is intentionally intercepted, disclosed, or used in violation of applicable laws may in a civil action recover from the person or entity which engaged in that violation statutory damages of ten thousand dollars ($10,000) or more, punitive damages; and a reasonable attorney's fee and other litigation costs reasonably incurred.

87.    At all relevant times herein Defendants had access to the emails of Hampton Reserve residents, including the contents of the emails by, between and amongst the 150-plus adults residing in Hampton Reserve, and had the ability to intercept, obstruct and block such emails.

88.    In violation of the Tennessee Wiretap Act Defendants and their representatives, by use of electronic, software, mechanical or other devices, did themselves and procured others on their behalves to intentionally, knowingly, improperly and unlawfully intercept, obstruct, block, disclose and use the emails and the contents of emails originated by Plaintiff and third parties not named as Defendants herein, i.e., the Intercepted Emails.  The Intercepted Emails were sent to third parties not named as Defendants herein and were intercepted, obstructed, blocked, disclosed and/or used by Defendants without Plaintiff and/or the intended recipients' prior consent and for purposes in furtherance of Defendants' unlawful and tortious activities as described herein.

89.    On August 6, 2013, Plaintiff sent a letter to Defendant Flinn, via certified mail, regular mail and her attorney requesting confirmation of Defendants' agreement to comply with Plaintiff's cease and

desist notice vis-à-vis the Intercepted Emails, i.e., the Cease and Desist Demand. No response to the Cease and Desist Demand was received.

90. When engaging in the acts as set forth hereinabove, Defendants acted maliciously, i.e., with ill-will, hatred and/or spite. Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to the consequences can be implied.

91. Plaintiff has been damaged in excess of the jurisdictional minimum of this Court. Defendants' wrongful acts as alleged herein have caused and are causing damage to Plaintiff. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered compensatory, statutory and consequential damages. Plaintiff also is entitled to an award of exemplary and punitive damages in excess of $1,000,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful and bad faith conduct.

92. Accordingly, Plaintiff prays for relief as hereinafter set forth.

## COUNT V

### DEFAMATION AND
### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

93. Paragraphs 1-92, above, are hereby restated and incorporated herein.

94. During the August 8, 2013, HOA Special Meeting Defendant Robert Nebel, to the visible satisfaction of his spouse, Defendant Joy Nebel, audibly, incredulously and in an unsolicited vitriolic and expletive-ridden outburst publicly said to Plaintiff, while she was politely and calmly exercising her right to participate in the open discourse of the evening's discussions, "shut the f--- up, you rotten c---."

95. Defendant Robert Nebel published the aforementioned statement about Plaintiff with knowledge that the statement was false and defaming to Plaintiff. Defendants trivialize, summarily dismiss and self-define Defendant Robert Nebel's slanderous statement as "mere vituperation and abuse" not to be taken "seriously" by Plaintiff or others. Defendant Robert Nebel had ample opportunity to apologize to Plaintiff for his slanderous statement but never exercised the appropriate civility or discretion to do so.

96.    By the act of publishing the aforementioned wonton, reckless and willful statement Defendant Robert Nebel intended to impair Plaintiff's reputation, character and standing in the community and subject Plaintiff to personal humiliation, mental anguish, suffering and emotional distress.

97.    By the act of publishing, encouraging and supporting the aforementioned statement Defendants acted maliciously, i.e., with ill-will, hatred and/or spite.  Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to the consequences can be implied and that publishing the aforementioned statement would impair Plaintiff's reputation, character and standing in the community and subject Plaintiff to personal humiliation, mental anguish, suffering and emotional distress.

98.    The actions of Defendants caused Plaintiff to suffer personal humiliation, mental anguish, suffering and emotional distress and she was injured thereby.  Plaintiff also is entitled to an award of exemplary and punitive damages in excess of $1,000,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful and bad faith conduct.

99.    Accordingly, Plaintiff prays for relief as hereinafter set forth.

## COUNT VI

## CONSPIRACY TO COMMIT CIVIL EXTORTION

100.    Paragraphs 1-99, above, are hereby restated and incorporated herein.

101.    The actions of Defendants and those acting on their behalves and/or in concert with them (the "Coconspirators") constitute a common design between two or more persons to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means.

102.    Such overt acts of the Coconspirators in furtherance of said conspiracy resulting in injury to Plaintiff include, but are not limited to, extortion (as that term is defined under Tenn. Code Ann. § 39-14-112(a)) by coercion (as that term is defined under Tenn. Code Ann. § Tenn. Code Ann. § 39-11-106(a)(3)).

103.   Such overt acts of the Coconspirators in furtherance of said conspiracy resulting in injury to Plaintiff also include, but are not limited to, the breach or violation, refusal or failure to honor and adhere to the CC&Rs and the Covenants by improperly encouraging Hampton Reserve residents and homeowners through inducement, persuasion, misrepresentation, or other means; threats, intimidation and harassment regarding HOA business; and threats, intimidation, harassment, and defamation of Plaintiff and her authorized representative.

104.   Such overt acts of the Coconspirators in furtherance of said conspiracy resulting in injury to Plaintiff also include, but are not limited to, hiring and using HOA Board agents and representatives and then paying them exorbitant and unconscionable fees in the Coconspirators' efforts to wrongfully and unreasonably "cram down" the HOA members' approval of amendments, alterations and modifications to HOA governing documents; wrongfully accusing Plaintiff and those authorized to act on her behalf of myriad offenses; and exposing Plaintiff and those authorized to act on her behalf to hatred, contempt or ridicule in the business community.

105.   Such overt acts of the Coconspirators in furtherance of said conspiracy resulting in injury to Plaintiff also include, but are not limited to, subjecting Plaintiff and those authorized to act on her behalf to threats and acts of public embarrassment and harassment, defamation and injurious falsehoods pertaining to her and/or her authorized representatives' reputations, characters and good names; violating Plaintiff's rights to privacy; the institution and threats of groundless civil suits in bad faith; using and abusing the legal system in order to coerce Plaintiff and others into providing benefits to Defendants and/or transferring the Common Areas from the HOA to certain Coconspirators to which the Coconspirators are not otherwise entitled; and other acts of wrongful inducement, persuasion, misrepresentation, or other means to induce, procure and/or accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means.

106.   When engaging in the acts as set forth hereinabove, the Coconspirators acted maliciously, i.e., with ill-will, hatred and/or spite.   The Coconspirators' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to the consequences can be implied.

107. The Coconspirators' wrongful acts as alleged herein have caused and are causing damage to Plaintiff. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered compensatory and consequential damages. Plaintiff also is entitled to an award of exemplary and punitive damages in excess of $1,000,000 as necessary to punish and deter the Coconspirators and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful and bad faith conduct. Under Tenn. Code Ann. § 47-50-109 Plaintiff is entitled to recover treble damages.

108. Accordingly, Plaintiff prays for relief as hereinafter set forth.

## COUNT VII

## CONVERSION

109. Paragraphs 1-108, above, are hereby restated and incorporated herein.

110. Before and after the HOA Special Meeting Hampton Reserve Plaintiff asked Defendants to provide, produce, secure and not dispose of or destroy certain videos, books and records, and accounting and financial information belonging to the HOA. Defendants did not properly respond to any of these requests.

111. Plaintiff and other HOA members and residents asked Defendants to provide, produce, secure and not dispose of or destroy certain videos (the "Spoliation Letter"), books and records (the "Inspection Request"), and accounting and financial information belonging to the HOA (collectively, the "HOA Property"). The HOA owns the HOA Property. Defendants do not own the HOA Property. True and accurate copies of the Spoliation Letter and the Inspection Request are attached hereto as **Exhibit 6** and **Exhibit 7** and incorporated herein.

112. Defendants have not produced or provided access to the HOA Property. Defendants appropriated the HOA Property to their own use and benefit to the exclusion of and in defiance of Plaintiff and the HOA's rights. Defendants and/or their agents or authorized representatives have willfully exercised dominion and control over the HOA Property and/or have destroyed one or more items constituting the HOA Property.

113.  Defendants know and have known that the withholding and/or destruction of the HOA Property would disrupt and/or compromise certain of Plaintiff and the HOA's legal rights to the HOA Property.  When engaging in the acts as set forth hereinabove, Defendants acted maliciously, i.e., with ill-will, hatred and/or spite.  Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to the consequences can be implied.

114.  Defendants' wrongful acts as alleged herein have caused and are causing damage to Plaintiff and others similarly situated.  As a direct and proximate result of the aforementioned acts, Plaintiff has suffered compensatory and consequential damages.  Plaintiff also is entitled to an award of exemplary and punitive damages in excess of $1,000,000 as necessary to punish and deter Defendants and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful and bad faith conduct.

115.  Accordingly, Plaintiff prays for relief as hereinafter set forth.


**COUNT VIII**

**DECLARATORY JUDGMENT**

116.  Paragraphs 1-115, above, are hereby restated and incorporated herein.

117.  Plaintiff contends that the HOA Board is obligated to provide access to the HOA Property for Plaintiff's inspection and copying.  Defendants contend that they are not obligated to provide access to the HOA Property for Plaintiff's inspection and copying.

118.  An actual, substantial and continuing justiciable case and controversy exists between Plaintiff, on the one hand, and Defendants, on the other hand, based on competing claims to access and inspection rights vis-à-vis the HOA Property.

119.  Plaintiff contends that Defendants cannot restrict the use of the HOA Proxy to the HOA Board members alone.  Defendants contend that they can restrict the use of the HOA Proxy to the HOA Board members alone.

120. An actual, substantial and continuing justiciable case and controversy exists between Plaintiff, on the one hand, and Defendants, on the other hand, based on competing claims as to the limitations on use of the HOA Proxy.

121. Plaintiff has been injured and damaged by Defendants' claims as asserted hereinabove.

122. Declaratory relief is appropriate and necessary in this case. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and Tenn. Code Ann. § 29- 14-101, *et seq.,* Plaintiff requests a declaratory judgment from this Court in accord with her contentions as expressed hereinabove.

**COUNT IX**

**QUIET TITLE TO REAL PROPERTY**

123. Paragraphs 1-122, above, are hereby restated and incorporated herein.

124. Plaintiff has legal and equitable interests in the Common Areas and the Covenants that are appurtenant to and run with the land situated in Hampton Reserve.

125. Defendants are publishing false statements about the title to the Common Areas including, but not limited to, the nature and extent of each Hampton Reserve Lot Owner's undivided ownership interests therein and legal rights thereto.

126. The claims of Defendants are clouds on title to the Common Areas and each Hampton Reserve Lot Owner's, including Plaintiff's, undivided ownership interests therein.

127. Plaintiff seeks a judicial declaration that Plaintiff and each Hampton Reserve Lot Owner possesses an undivided ownership interest in and to the Common Areas and that Defendants cannot transfer and/or encumber any interest in the Common Areas to any Defendant or other Lot Owner without first obtaining the appropriate approval of Williamson County and Brentwood city officials and the unanimous consent of all parties having any right, title or interest in and to all or any portion of Hampton Reserve.

## COUNT X

## INJUNCTIVE RELIEF

128.  Paragraphs 1-127, above, are hereby restated and incorporated herein.

129.  Plaintiff seeks relief enjoining Defendants from violating the CC&Rs and the Covenants, transferring Common Areas in violation of the CC&Rs, and using the HOA Proxy in violation of the CC&Rs, applicable laws and Robert's Rules of Order; unlawfully prohibiting Plaintiff and HOA members' access to the HOA Property; wiretapping in violation of federal and state laws; refusing to prepare timely and adequate minutes of meetings of the HOA Board and the HOA; and holding confidential and/or other meetings of the HOA and/or the HOA Board in violation of the CC&Rs, the HOA governing documents and/or Robert's Rules of Order.

130.  Unless enjoined by this Court, Defendants and/or others will further violate Plaintiff's rights.  Adequate compensatory or other corrective relief will not be sufficient or available at a later date to remedy the violations and improprieties as alleged herein.  Plaintiff's damages are inadequate at law and monetary damages would not afford her adequate relief.  Further, there is a substantial threat that Plaintiff and others similarly situated will suffer irreparable harm unless injunctive relief is granted; the threatened injury to Plaintiff and others similarly situated if the injunctive relief is denied outweighs the possible harm to Defendants if relief is granted; and the issuance of injunctive relief in Plaintiff's favor will serve the public interest.

131.  Accordingly, Plaintiff seeks a temporary and permanent injunction against Defendants, and others acting in concert and/or in cooperation with any of them, as provided under applicable state and federal laws.

## COUNT XI

## ACCOUNTING

132.  Paragraphs 1-131, above, are hereby restated and incorporated herein.

133.  On July 29, 2013, Plaintiff served Defendants with a statutory request to inspect the books and records of the HOA, i.e., the Inspection Request.  Defendants have not appropriately responded to the

Inspection Request. A true and accurate copy of the Inspection Request is attached hereto as **Exhibit 7** and incorporated herein.

134. Plaintiff seeks an accounting of, among other things identified by statute and in the Inspection Request, all sums expended and received by, all assets acquired and disposed of, and all liabilities incurred or retired by the HOA, the HOA Board, and the HOA and HOA Board's representatives during calendar years 2012 through 2013.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. Judgment be entered in Plaintiff's and Involuntary Plaintiff's favor as to each and every claim in this Complaint;

b. For compensatory damages in an amount to be determined according to proof;

c. For consequential damages in an amount to be determined according to proof;

d. For punitive damages as requested herein in an amount as provided by law;

e. For treble damages as requested herein in an amount as provided by law;

f. For statutory damages as requested herein in an amount as provided by law;

g. For injunctive relief as requested herein and as provided by law;

h. For quiet title to the Common Areas as requested herein and as provided by law;

i. For an accounting as requested herein and as provided by law;

j. For reasonable attorneys' fees and costs; and

k. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ *Scott D. Johannessen*
_____

Scott D. Johannessen, BPR # 26767
LAW OFFICES OF SCOTT D. JOHANNESSEN
3200 West End Avenue, Suite 500
Nashville, TN 37203
Telephone:  877.863.5400
Facsimile:   877.863.5401
E-Mail:       scott@sdjnet.com
Web:          www.sdjnet.com

*Attorney for Plaintiff Susan DeCuyper*